The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the court is now sitting. God save the United States and this Honorable Court. All right. Good morning. Welcome to the Fourth Circuit. Even though we're by video today, we're glad to have you. And we'll hear argument in our first case, United States v. Franklin Ms. Haygood. Sandra Haygood for the appellant, Mr. Franklin. May it please this Honorable Court. In this case, the parties agree that because the enhancement under 2B of the guidelines for possession of a firearm in connection with the offense does not include definitions or commentary and has not generated any published cases in the circuit. The enhancement must be applied by turning to other provisions in the guidelines which use the same language. Thus, the parties agree that the enhancement in 2B should be interpreted the same way as the enhancement under 2K, which applies if the defendant, quote, possessed any firearm in connection with another felony offense, end quote, and includes commentary defining in connection with and has generated extensive case law in this circuit. Well, in this case, it's, I think, the guideline, the actual guideline for this offense is possession in connection with the offense as opposed to another offense. That's exactly right, Your Honor. That is a key distinction. And in this case, it's very significant because in this case, it means that the enhancement should only apply if the firearm was possessed in connection with either stealing or possessing the checks instead of, it can't have to do instead with the, excuse me, the drugs that were present in the car. Thus, the parties agree that this enhancement should be applied in relation to the way 2K works, except for that distinction that you have pointed out, Your Honor. This phrase in connection with has a settled... You agree, Counselor, we're here on plain error review, so this is not as if there were evidence or some objection raised in the lower court. Yes, Your Honor, and that's exactly why I'm starting where I'm starting because I want to make it clear that there was plain error. The government doesn't argue that there could not have been plain error. The government argues that the district court did not plainly err because the government argues that the district court correctly applied the enhancement, but they don't argue that the government could not have plainly erred. So, we do have to overcome that, but we can overcome it because there are decades of cases applying that language in connection with in the circuit and the district court plainly erred by not applying that case law. Furthermore, in... Why don't you explain to us why, in your view, there is an error under the case law? Okay. Yes, Your Honor. Well, first of all, under Mitchell and Bolden, the district court plainly erred because under Mitchell and Bolden, to apply the enhancement for possessing a weapon in connection with the offense, the court is required to make a finding of facilitation, number one, and that finding of facilitation has to be supported by reference to specific facts of the case, and the district court didn't do either one of those things here. Facilitation... And if there had been objections to that, you know, your argument would be spot on, but there was no objection, there was no evidence entered, so how can we make a determination as if there were? Your Honor, that is a good question, but despite the fact that there wasn't an objection, that doesn't free the court from its obligation to correctly apply the law, and the district court was still under an obligation to correctly apply the sentencing guidelines, and in this particular case, that means, because of the decades of precedent in this court, that the district court um, applying the language in connection with, this court was under an obligation to correctly apply the law, which meant correctly applying the language in connection with, and the district court didn't do that. It doesn't, you know, it... I don't think anybody argues that there's, you know, there's no finding here. I mean, we all know why, because nobody objected, didn't offer any evidence, so you seem to be arguing there's, under plain error, where the burden is yours, that the district court was under some sort of sui sponte duty to come in and make these findings on its own. Well, I'm just arguing that I think the case law does say that the district court had an obligation to do that, and I do think that the precedents establish that, but even if we want to give the district court on making that initial finding, on finding a facilitation, the district court didn't cite any facts. The PSR didn't cite any facts. The government, in its arguments at sentencing, didn't cite any facts. There were no facts in the record that would have supported this application of this enhancement under the guidelines, so it is true that we have... Well, it's arguable. I mean, we're never going to know because the arguments weren't made, but, you know, if the evidence were that the defendant was stopped and he had a gun and he had some cash and he had some weed and he had a check, it'd be pretty hard to make that argument, but I don't think you can allie that there were three quarters of a million dollars of stolen checks in the trunk, and there's a lot of people out there on the street who would think three quarters of a million is something they want to take steps to protect. Well, that's true, Your Honor, but I think it's extremely significant in this case that there was absolutely no evidence that Mr. Franklin was selling the checks, and if we think about the way that this enhancement can work when we're talking about selling drugs, it's the reason that there's such a close association. Well, I mean, do you think he was going to use them to decorate his wall? I mean, he's obviously stolen them for a purpose. Yes, he's clearly... Logically, you would think that was for some sort of monetary remuneration, and even if he disposed of them at 10 cents on the dollar, that's probably worth more than everything else that was in the car. That's absolutely true. That's absolutely true, but the point about selling the checks, first of all, there's no evidence that he was going to sell the checks. The other ways that he could make money from having the checks is by trying to pass them fraudulently, which is exactly the only time that he did actually get any financial benefit from the checks was that he himself cashed a check at a Walmart, and that's the way that he got money out of it. So there are ways to get money from stealing the checks without actually selling them, and there was no evidence that he tried to sell them. He didn't need a gun to go into a Walmart and pass the check off as being made out to him. He didn't need a gun to do that. The way that he might have needed a gun potentially is if he were engaged in selling the checks, then he has this contraband, and people who might buy it from him know that he has it. That's why there's such a close correlation between guns and violence and trafficking drugs, because if you're selling drugs, the people that you're offering them for sale to know that you have the drugs, and they know that you have cash, and they're, you know, not honorable people, so they're probably going to be, there's a big chance that they're going to try to steal them from you, but here there was no evidence that he was trying to sell the checks, which means that there was no evidence that he was sort of holding them out to the public in any way, or that anybody would know that he even had the checks, and that's why this case is very different from so many of the cases applying to Kay. There was just no evidence that he was trying to sell the checks. The government literally said, we'll never know. There was just no evidence to support that. Well, it seems to me that the manner of theft in this case, because he was a postal employee, and the theft almost by definition could not have involved a gun, coupled with the fact that later there were additional checks found without the presence of a gun, seems that the presence of a gun was simply coincidental, and in fact, I imagine many people carry guns in their, you know, on their person or with them when they're traveling, and that there was simply no, I mean, I can't see any evidence or even argument that the guns were in connection with the possession or the theft here. Yes, Your Honor, that's completely correct, and I think the point that you make is absolutely essential, that when he did not have the drugs, he did not have the gun. He was stopped twice and his home was searched. The only time he had a gun was when he had the drugs. When he was stopped the second time, he didn't have the drugs, he didn't have the gun. When his home was searched, he didn't have, he had a personal use amount of marijuana, that's all, and he had no, no gun. So that also had the gun when he had the three quarters of a million dollars in checks. That is true, Your Honor, that is absolutely true, but as I said before, there was no evidence that he was engaged in trying to sell the checks, and I think that points to a reason that this particular enhancement never seems to come up, because you just don't need a gun to commit the kind of crime and to make money from committing the kind of crime that my client was engaged in, in this particular case. Fraud and that sort of gun. So as I said, you don't need a gun to go into a Walmart and pass a check that was actually made out to someone else. Did possession of the gun lawful? Yes, there was no evidence that, that the gun was illegal or stolen or anything like that. So he was simply exercising his right to carry a gun lawfully? Yes, Your Honor. At the time that he was pulled over? As far as the evidence shows, that is exactly right. There's nothing, there's nothing in the record to indicate that the gun was illegal or stolen. That's right, Your Honor. So in this case, there was just simply no evidence that the firearm facilitated the offense of possessing the checks or stealing the checks, and it's insufficient that it, even if it had had a dual purpose, that would also not meet the requirements either. It can't be coincidental, which means that he had to have the gun because he had the checks and would have had the gun if he'd had the checks regardless of the drugs, but the facts prove exactly the opposite. So in this case, the enhancement just was not appropriate and the district court erred in applying it. Also, the district court, there's no help in the PSR. The district court did adopt the PSR, but the PSR just merely makes the conclusory statement that the enhancement applied and doesn't support it in any way. It just quotes the language of the enhancement itself, and there was nothing in the factual basis or arguments of sentencing that would have supported the enhancement either. Let me ask you this. So if we were to agree that with your argument, how the district court here gives an alternative, I guess, alternative sentence, and my guess is the government's going to probably say if there is an error that you have Gomez and Medez where he says, I'm going to, this is going to be the sentence even if I am wrong. So if you can, how do you get around that case? Judge Agee, I see that I only have less than two minutes. May I respond to this question? Sure. It's your time. Have at it. Okay. This is, I plan to discuss this much further in the second part of my argument, but in a nutshell, this case is unlikely. You ought to address it now so the government has a chance to rebut. Okay. The government, first of all, has the burden to show that this serious procedural error was harmless. And in this case, although the government announced an alternative variant sentence, this case is very, very different from cases in which the district court says that it would imply, it would apply the same sentence regardless because normally what the district court is doing, it's been presented with a specific guidelines potential error. And the court can say that even if I'm wrong in this guidelines calculation and it would affect the sentence by X number of months, I would still give the same sentence. This is not like that because in those circumstances, the district court is able to identify a specific, specific impact on the guidelines and say that impact on the guidelines would not be enough to change my sentence. But that's not what happened here. In this case, the district court was essentially flying blind and saying that I would imply, I would apply the same sentence regardless of any guidelines calculation error that I made. And this flies in the face of Gaul because Gaul requires that the framework for the district court sentencing decision has to be a correct guidelines determination and the district court has to be cognizant of the guidelines at all times. But when the district court just says, no matter what mistake I might have made, no matter what mistake I might have made, I would impose the same sentence, that untethers, unanchors the district court sentencing decision from the guidelines. And that's why the alternate variance argument doesn't work here. And the second reason is that in a case like Cox, for example, the district court made it abundantly clear that the district court would vary upward. In Cox, the district court had a impact on the guidelines. The district court was able to say this impact on the guidelines is not enough to change my sentence. And if I had to, I would vary upward to reach the same sentence. Nothing like that happened here. The district court didn't explain or justify why it would impose an upward variance. And in fact, the sentence that the district court imposed was that toward the low end of what the district court believed was the correct guideline range. And it was just nothing in the district court's discussion that would make this court know, which is what the court has to do, this court has to know what the district court would have done. The district, it has to be for assumed error harmlessness, this court has to know exactly what the district court would have done if it had had the correct guideline sentence in front of it. And there are many instances where this court can know that, but this is not one of them. In this particular case, the court can't know that because nothing that the district court said would explain why it would vary upward is such a significant amount. If it had had the correct guidelines in front of it. All right. Thank you, Ms. Hagood. You've got some rebuttal time. Ms. Englander. Thank you, Your Honor. May it please the court, Kate Englander on behalf of the United States. The district court applied an enhancement because the defendant possessed a loaded gun in a car with hundreds of thousands of dollars in stolen checks. The defendant never objected to the application of that enhancement, nor to any of the facts that supported it. So the government had no further burden at sentencing. And now on appeal, the defendant has the sole burden to show each of the four prongs of plenary review, and it cannot meet its burden. Let me ask you about this. There's a recent case from this court, I think it's from last year, Henderson, that says that the district court has the independent obligation to properly apply and calculate the guidelines. How is that not relevant here? So the district court absolutely has the obligation to correctly apply the guidelines. It did so here. I guess my question is, it seems to be the district court didn't, and in terms of independent obligation, this analysis regarding if the gun was being used, I guess, in furtherance of this, there's no real analysis there. Basically, I think the district court just says if I get it wrong, it'll say the same. So how is that the district court under Henderson meet that obligation, that independent obligation? So this court has long held that facts that are in the PSR and are not objected to, the district court can take those facts as true. In this case, the district court- weapon in the vehicle, lots of people drive around with weapons in their vehicles, nothing unlawful about that. In fact, I think in many instances, that's constitutionally protected. So I don't think that there's a disagreement about that fact. I think the disagreement or the question is the in connection with language. Was there anything in the PSR suggesting that the weapon that was found was used in connection with the charged crime? There was a finding in the PSR that it was in connection with the crime. Is it a finding or a statement? It's a statement that the court then adopts when it adopts the PSR. What facts are in the PSR that support that? So I think there are several, Your Honor. First, it is a loaded gun, that, you know, undisputed. Also, I disagree that there's no evidence that the defendant was trying to sell these checks. So first of all, he's in the car with another person who- there's a check in the car that has already been altered to reflect her name. That indicates that she's at least a potential co-conspirator. So he's in the car with somebody, the payee line reflects that a check has already been altered into her name. It's, again, $750,000 in stolen checks, um, which is- and so I think this is a situation where, if Your Honor, for example, the defendant had a loaded, um, a hunting rifle that was locked in the trunk and all of these checks in the car. That's a different situation than this. What we have here is a defendant who is um, a gun that is loaded, accessible, ready to use, all of these checks in the car. They're all potentially negotiable. That was what the attorney, the EOSA, proffered at sentencing. Um, and frankly, Your Honor, the gun wasn't lawfully possessed here where I think the defendant basically concedes the defendant was also selling marijuana from the car. It's not lawful to possess a firearm in connection with that. Um, but I think this is analogous to situations where somebody has an enormous amount of drugs in the car and a gun because what you have is a huge amount of contraband that the defendant has no, um, ability, for example, if it's stolen, to go to the police and say, hey, somebody stole my stolen checks, right? So there's a need to protect that contraband. Is he charged with selling checks? My, I, my understanding is he was charged with, uh, possession of, of stolen checks and stealing checks. Was he charged with selling the checks? He was not charged with selling them, but that, there was an indication, um, and this is proffered by the EOSA that that was part of the scheme. But doesn't the in connection with, doesn't the in connection with language have to be in connection with the charged crime? With the crime or with under 1B1.3 of the guidelines or with trying to, um, not get caught, frankly. So a connection with the, he's possessing the checks. Selling them is part of not trying not to get caught? Yes, Your Honor. I mean, it's part of the conspiracy to possess these checks, which I understand that what the, what he pled to is possession of the stolen checks, but in order to keep possessing them and to, um, benefit from that, he has to find a way to turn them into real money. So I guess looking at your example regarding like the drugs and the gun, I mean, there, he had, there were 47 checks that were in the trunk. There was, there was so, and there was one check that was in the car. So if I use your earlier analysis, I don't, I mean, I, that seems to help Mr. Franklin, right? I don't think so, Your Honor. I think if someone has several kilograms of drugs in the trunk and a, and a loaded weapon in the car, it's, it's, I think this court is how, I mean, I, I can't cite to a specific case, but that in the, under those circumstances, the gun is certainly facilitating the possession of that contraband, those drugs. Yeah, but here it is, 47 checks, I think in the trunk of a car. And then there's one check in the car. Um, there's one check in the car with the, in the backpack or something with the gun. So, so I guess what I'm, if I'm looking at Mitchell and Bolden, you, the whole in connection with this is facilitation and how do we get to that? He had the gun to facilitate, um, stealing the checks. The legal standards, whether it facilitated or had the potential to facilitate the crime. This is a situation where somebody has, he's in a car, he has an enormous quantity, $750,000 in stolen checks. Even if we're to, to judge DG's point to assume that there may be worth 10% of that, that's still $75,000. That's an enormous amount of contraband that he has in the car. Um, and the possession of the gun in connection, is in connection with that in the sense that it emboldens him and it protects him in the situation where somebody might try to steal it. Again, I do think there are circumstances here. He's in the car with another person who is clearly a potential co-conspirator. Um, and some of this gets back to the point that if this had been raised as an objection. Potential co-conspirator? Is there anything in the, is there anything in the record about that? One of the checks had been altered to reflect that her name was the payee. That's, the check in the backpack has her name on it. And it, her name was not on it originally. It was not. So why is that relevant to the fact that there's a gun in the car? Well, I think it's so, if he's dealing with people who may know that he has stolen checks, right? He has a need to self-help. It's the same situation that a drug dealer has when they have customers coming to them, right? Who know that they have drugs. Um, they may be in a situation where somebody might try to steal those drugs. Somebody, you know, if people know that you have contraband, you have a need to protect yourself. The person in the car with him, I think the evidence was just, did know that. And again, this gets back to the point, the government, the fact that her name was on it and that the other, the other check that was cashed doesn't seem like he was trying to cover, wasn't doing a very good job covering up because he used his own name. So that doesn't really support your argument that he was selling the checks. Seems like he was cashing them in his name and in the name of his friends. He cashed one in his name. Um. And is there anything that suggested he was selling them? What the AUSA proffered at the sentencing hearing was that, um, there wasn't evidence that he intended to recruit others to, and this is at page 48 of the record, um, to involve other criminals, have them put their name on the pay lines. Now, if this, there had been an objection to this in connection with enhancement, the government could have put on additional evidence about this, but because everyone agreed to these facts and the fact that this enhancement applied, the government didn't, didn't have an obligation to do that. It had met its burden, um, with the facts that were put forth in the uncontested PSR. Um, and I do think that the, the Fifth Circuit cases that the, uh, defendant filed a reply brief are readily distinguishable in this case, and so I want to highlight those. In those cases, you have a situation where the defendant has a gun and also, um, like, documents that he's intending to send to the bank, um, in order to commit bank fraud, um, you know, forged documents, fake IDs, things like that. Those are not the types of documents that need to be protected, um, with a gun. They don't have the same inherent value that $750,000 in stolen checks do. Counsel, do you have a case name to go with your description? Apparently, you're referencing a specific case. Well, I'm, yes, Your Honor. I'm referencing two cases that the defendant cited in the reply brief. One is, um, United States v. Fedife, and the other is, uh, United States v. Houston. And those were both cases where the Fifth Circuit found that this enhancement, um, apply, but circumstances where the gun really does seem coincidental or incidental to, you know, somebody who's got a bunch of fraudulent loan applications, um, or, you know, a fake ID, essentially. This is a different situation, and I think, frankly, this is a situation that is very close to the Mongarella case, which the defendant also cites in the reply brief, um, which is an unpublished case in the Fifth Circuit. But in that case, the defendant possessed a gun at a telemarketing fraud center, um, where he also had about 340, I'm sorry, $3,400 in cash on his purse in. And there, this court found that it was not an error, um, to say that, that the gun was possessed in connection with the wire fraud conspiracy that he was conducting out of that call center, because the security concerns, um, implicit in holding that much cash. Here, we have a defendant who has, uh, contraband that is in a value definitely exceeding, uh, $3,400. And so, I think that the Mongarella case really does support that being an application of the in connection with, um, here. Um, and I, and I do want to touch, uh, also on plainness of the error. So, in order for the, us, this court to reverse, it would have to find not only that the district court committed an error in applying the enhancement, but that it was so clear and obvious that essentially the district court should have known it. Um, and I think that there's two ways in which the defendant cannot meet the plainness prong here. So, first, there is no binding precedent in this circuit on this specific, um, enhancement, although there is plenty on sort of the parallel enhancement that we've talked about. Um, and I, the one case in this circuit, um, that the defendant has referenced Mongarella, which is unpublished, I think does, like I said, support application of the enhancement here. Um, but also factually, it's not clear and obvious. Even if it's, even if the court finds it was error, it's not clear and obvious that the gun was here only to protect the drug. So, I think, um, you know, uh, opposing counsel referenced the fact that he was later stopped and he did not have, um, no drugs, no gun, essentially. But also, he didn't have a gun, but he didn't have $750,000 in stolen, um, stolen checks with him. So, I don't think that that supports that position. Um, so, the defendant doesn't, does not demonstrate that the error here was plain, either factually or legally. And lastly, I want to turn, um, to the prejudice prong. And first, I want to respond to the argument that the defendant made in their reply brief about the application of the zero-point offender guideline. Um, what the counsel says is, uh, the counsel, we can only infer that the PSR didn't apply the reduction based on the incorrect conclusion that Mr. Franklin possessed a firearm in connection with the offense. Um, that is not enough to meet their burden. So, this is another point I want to make. Defendant says that it's the government's burden to show that the error was harmless. That is not true where we are on plain error. The defendant has the burden to show that he was prejudiced by the error. And he cannot meet that here. But as to zero-point offender, um, so, defendant can't meet their burden on that, on, on this record. I'm not sure that zero-point offender would have applied. Defendant would be ineligible for that if what he did caused a substantial financial hardship. Um, I don't know, the government didn't have an opportunity to put on evidence of that. I know that it's a very high bar to show. I don't know if the government could have done it here or not. Um, but again, the defendant has the burden to show that he would have, it definitively would have been bad. And I don't know that that's the case. I, um, the record, page 84 of the JA, there are some victim impact statements. Um, one person described basically having to partially close her small business because she was never able to get the $3,000 check that went missing. Um, so I think there is at least some indication that he may not have met zero-point offender. Um, but we don't know for sure and we can't know because the defendant never raised this. Um, but even if the defendant is right that he would have been a zero-point offender if that guidelines, um, application or enhancement was applied in error. Um, and if that error was plain, even if the defense is right about that, the 48-month sentence is still a relatively small variance, um, and not significant compared to others that have been upheld. Um, and lastly, I want to address the alternative variance. So, um, defendant basically says it can't stand because the district court was unaware of this, what they claim is an error. Um, and so therefore it wasn't anchored by a potential alternative guidelines range. Um, that is not the law. So first, the defendant is assuming contrary to what the district court said that it would have given a different sentence if the guidelines had been different. Um, what this court has said in Gomez-Zimadez, Hargrove, Savio and Matute, and as recently as last week in the Roy case, we take the district court at its word. When it says that it would have given the same sentence, we take it at its word. But doesn't the district court have to give us some explanation as to why to the upward? I mean, if we look at Gall, doesn't the district court have to give us some explanation as to why? I mean, he just, here the district court gave no explanation. District court just says if I, if I do, I do think I properly calculated the advisory guidelines, but I announced pursuant to Gomez-Zimadez and Hargrove that I'd impose the same sentence. I mean, doesn't it have to be an explanation as to why he would impose the upward variance? The district court has to, has to say that it would give the same sentence and it has to be substantively reasonable. I don't believe that there's any additional requirement. But wouldn't it be substantively reasonable? We have to have a reason. There's no reason here. He just says I would give the same sentence. That's the, I mean, that's the concern is that you have to say why you would have given the upward variance. You can't just say, I'm going to do the same thing. It's kind of like, that seems like what the district court said here. So, the guidelines are advisory with the district court. The district court can take, as this court said in Royal Association, can take the measure of a man. So, it has to, in order for the alternative variance to hold, there are two parts to it. The defendant, sorry, the district court has to say that it would give the same sentence anyway and make that clear, which the district court did. And then that sentence has to be substantively reasonable. And that's where the explanation piece I think that Your Honor's referring to comes in. Here, the district court extensively considered the 3553A factors. So, it acknowledged the mitigating arguments that were in this case, the fact that it credited the fact that he was trying to help his family, that he was the sole caretaker. But doesn't Gall tell us that if district court says the district courts are to give their reasoning when imposing an above the guidelines sentence? I mean, because it would be above the guidelines if he is in fact wrong, right? So, I think Gall says if you're going to do something that would be above, you have to give a reason? The district court obviously didn't think it was giving an above guidelines sentence. But what this court has said- Well, he does say if I didn't calculate it right, this is what I want to do. If I didn't calculate the advisory guideline range right, then this is what I would do. So, it's almost as if he's contemplating if I'm wrong and it is less, then this is what I would do. I'm going to leave it. It is still going to be the same sentence. But he doesn't give a reason. Well, I think the district court gives a reason under all the 35 degree factors for that sentence, and that is the reason. Because the guidelines are advisory and the district court is obligated to take into account the full totality of the defendant's circumstances, which this district court absolutely did. It said right up front, I'm going to consider the totality of the defendant's life, the good, the bad. And it did consider all of those things, including in this case, the extraordinary need for adequate deterrence of other potential postal employees who might want to steal mail. So, and your Honor's point, I think Melina Martinez also addresses this exact issue where it says, you know, most of the time, the district court is going to have to correctly calculate the guidelines range. But there could be circumstances where the district court says this is the correct sentence for this person, and therefore, even if there's an error, it can be affirmed. So, it explicitly contemplates that situation in that case, and this court has repeatedly upheld alternative variant sentences under very similar circumstances, including in the cases that are cited. And again, I think the court did really address the unique characteristics of the defendant in this case, and coming up with that 48-month sentence, that sentence was reasonable in light of all those 35 to 3 factors. And based on that, this court should affirm. Unless the court has any questions, I'll yield the remaining time. All right. Thank you, Ms. Englander. Ms. Haygood, you've got some rebuttal time. Thank you very much. First of all, I just want to briefly note that I believe the United States is conflating two different types of prejudice. The defendant does have the initial burden under plain error to show that his substantial rights were affected. In other words, that the sentence was different than it would have been otherwise. But in Gall and Molina-Martinez, I'm sorry, in Molina-Martinez, this court has said that without more, in most cases, showing that the district court applied the guidelines incorrectly satisfies the defendant's burden to show that his substantial rights were affected. And that's not the same as the fact that on harmless error, the government has the burden to show that the sentence would have been the same, regardless that the defendant's ending sentence wouldn't have been different. The next thing I want to emphasize is that harmless error only applies, as this court said in Sisson, when this court knows a district court would have reached the same result because it tells us that it would have done so and it explains why. And that is such an important point because although in Cox, this court recently said that the district court, that this court takes the district court at its word, I think that you can't just take that and run with it because the cases show that that does not mean that once the district court says alternate variant sentence, boom, those are magic words. That's not what it does. It's exactly the opposite. This court does in fact look to see if the court justified and explained why it would reach the same sentence regardless. And in Cox, the court did exactly that. But in this case, the court did not do that. The court very, excuse me, the court sentenced the defendant to what the court thought was toward the low end of the guideline range. In order to have sentenced the defendant to the same sentence, he would have had to vary upward by 11 months on top, to add 11 months on top of the high end. The 11 months is what you had in your reply brief, but your opening brief said two months. Yes, Your Honor, that's correct. That is because I originally missed the fact that in addition to failing, incorrectly applying the enhancement, because the court did that, he also failed to give Mr. Franklin credit two levels down for the fact that he was a zero point offender. And that is the reason for the bigger difference, the four level difference. I understand the problem, but I mean, here we're not only on plain error of review, but we have two briefs from the same party that reach different conclusions. Your Honor, I apologize for that. And that is completely my mistake that originally I did not. So, Hoggard, wasn't your original brief an Anders brief? Yes, Your Honor, it was. Yes. And so, it wasn't a regular appellate brief, it was an Anders brief. That is correct, Your Honor. And this court ordered the government to file a brief and then allowed me to respond to that brief. And so, this court did its job and flagged the issue. I had originally raised the issue that the enhancement wasn't justified, but I didn't realize that my client could show substantial error under Gaul. I mean, that his substantial rights were affected under Gaul already. And I also thought that the difference was only two months, but I corrected that in my reply brief. And the difference is actually four months, and it's a significant error, and it substantially affected my client's rights. And the government can't meet its burden to show harmless error. And assumed harmless error review doesn't apply because it's not clear what the district court would have done had he had the correct guidelines arranged in front of him. My time is over. Thank you. I want to thank both counsel for their argument. It was, hey, good, we want to give our special appreciation to you. You're court appointed. That's a vital function. We could not perform our function if it weren't for lawyers like you who step forward and agree to undertake those tasks. So, obviously, we can't come down and greet you as we normally would, but hopefully we'll have that opportunity in the future. So, with that, we will take the case under advisement, issue an opinion in due course, and we'll now take a one-minute break while they switch out to the next case.
judges: G. Steven Agee, DeAndrea Gist Benjamin, Nicole G. Berner